UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

CHARLES JONES and ALEXIS JENKINS, on behalf of themselves and all others similarly situated,

                                 Plaintiffs,

    - against -

THE McGUIRE GROUP, INC., BROOKHAVEN HEALTH CARE FACILITY, LLC, GARDEN GATE HEALTH CARE FACILITY, LLC, AUTUMN VIEW HEALTH CARE FACILITY, LLC, NORTH GATE HEALTH CARE FACILITY, LLC, SENECA HEALTH CARE CENTER, LLC, and HARRIS HILL NURSING FACILITY, LLC,

                                Defendants.

------------------------------------------------------------------------- X

Case No. 22 Civ. 5389

CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Charles Jones and Alexis Jenkins ("Plaintiffs"), on behalf of themselves and all other similarly situated employees, bring this lawsuit against Defendants The McGuire Group, Inc., Brookhaven Health Care Facility, LLC, Garden Gate Health Care Facility, LLC, Autumn View Health Care Facility, LLC, North Gate Health Care Facility, LLC, Seneca Health Care Center, LLC, and Harris Hill Nursing Facility, LLC ("Defendants") allege as follows for their Complaint:

## <u>INTRODUCTION</u>

1.     Plaintiffs were employed by Defendants Brookhaven Health Care Facility, LLC, Garden Gate Health Care Facility, LLC, Autumn View Health Care Facility, LLC, North Gate Health Care Facility, LLC, Seneca Health Care Center, LLC, and Harris Hill Nursing Facility, LLC (collectively, the "Facility Defendants") and The McGuire Group, Inc. as "Manual Workers" as defined by New York Labor Law ("NYLL") § 190(4), having worked for Defendants in New York as Dietary and Maintenance Workers.

2.      The McGuire Group, Inc. owns and operates the following six health care facilities serving Western New York and Long Island:

a.   Brookhaven Health Care Facility, located at 801 Gazzola Drive, East Patchogue, NY 11772 ("Brookhaven");

b.   Garden Gate Health Care Facility, located at 2365 Union Road, Cheektowaga, New York 14227 ("Garden Gate");

c.   Autumn View Health Care Facility, located at 4650 Southwestern Blvd., Hamburg, New York 14075 ("Autumn View");

d.   Northgate Health Care Facility, located at 7264 Nash Road, North Tonawanda, New York 14120 ("Northgate");

e.   Seneca Health Care Center, located at 2987 Seneca Street, West Seneca, New York 14224 ("Seneca"); and

f.   Harris Hill Nursing Facility, located at 2699 Wehrle Drive, Williamsville, New York 14221 ("Harris Hill").

3.      Defendants paid Plaintiffs and other Manual Workers employed at their six New York facilities on a biweekly basis.

4.      As a result, Defendants violated the requirement that manual workers be paid within seven days after the end of the workweek in accordance with NYLL § 191(1)(a), and the requirement that employees "be paid on the regular pay day" under the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201, *et seq*, (*see* 29 CFR § 778.106).

5.      As a result, Defendants violated the requirement that manual workers be paid on a weekly basis in accordance with NYLL § 191(1)(a).

6.      Plaintiffs bring the First and Second Causes of Action under the FLSA § 216(b) and NYLL § 198, respectively, for liquidated damages and interest, arising from Defendants violation of the FLSA and NYLL § 191.

7.      Because Plaintiffs and their co-workers are similarly situated and the statute of limitations is continuing to run against them until they file a consent to join in this action, Plaintiffs,

2

seek certification of this matter as a collective action and leave to notify the "FLSA Collective," defined as follows:

> All employees working in the State of New York for Defendants as Manual Workers, at any time in the three years prior to the filing of this Complaint.

8.      Because the harm suffered by Plaintiffs and their co-workers was widespread, Plaintiffs bring this case as a class action and will seek certification under Federal Rule of Civil Procedure 23 ("Rule 23") for the following "Class":

> All current and former employees of Defendant working as Manual Workers throughout the State of New York during the time period from six years prior to the filing of the complaint until the date of judgment in this action.

## JURISDICTION & VENUE

9.      Jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 201, *et seq.*, 28 U.S.C. § 1331 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10.      This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

11.      This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## THE PARTIES

### Plaintiff Charles Jones

12.      Jones is a resident of Suffolk County, New York.

13.      Jones worked for Defendants at Brookhaven from about December 2019 through February 2022.

3

14.     Jones worked as a Maintenance Aide.

15.     At all times relevant, Jones was an "employee" as defined by 29 U.S.C. § 203(e)(1).

16.     At all times relevant, Jones was an "employee" as defined by NYLL §§ 190(2), 651(5).

17.     Most of Jones's time was spent performing physical labor.  That is, Jones's duties included maintaining common areas, cleaning, throwing out garbage, removing and shoveling snow, and performing handyman tasks.

18.     Defendants' job descriptions for Jones's position list the essential job duties of the job to be:

    a.  Perform general clean up of all areas of the building as directed;

    b.  Manage routine upkeep of exterior areas, green space and parking lot;

    c.  Complete non-routine cleaning according to specified job orders;

    d.  Remove rubbish and recycling daily and prepare bins for weekly pick-up;

    e.  Handle emergency cleaning and upkeep requests;

    f.  Ensure rooms are maintained and fully equipped;

    g.  Troubleshoot issues with HVAC system, lighting and indoor climate control as necessary; and

    h.  Ensure building safety rules are implemented and maintained.

19.     At all times relevant to the Complaint, Jones was a "manual worker" within the meaning of NYLL § 190(4).

20.     Jones's primary duties as a Maintenance Aide were non-clerical, non-managerial, and not related to sales.

21.     As a result, Jones was a "manual worker" as per NYLL § 190(4).

4

22.     Jones was entitled to payment of his wages withing seven calendar days after the end of the workweek, as per NYLL §191(1)(a).

23.     Throughout his employment, however, Defendants paid Jones every two weeks.

24.     For example, on February 10, 2022, Defendants paid Jones for work performed from January 23, 2022 through February 5, 2022.  The first week of this payment cycle, ended on January 29, 2022.   He was paid 11 days after January 29, 2022.

25.     Jones has expressed his consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A.

**Plaintiff Alexis Jenkins**

26.     Jenkins is a resident of Erie County, New York.

27.     Jenkins worked for Defendants at Garden Gate from about June 2019 through October 2019.

28.     Jenkins worked as a Dietary Aide.

29.     At all times relevant, Jenkins was an "employee" as defined by 29 U.S.C. § 203(e)(1).

30.     At all times relevant, Jenkins was an "employee" as defined by NYLL §§ 190(2), 651(5).

31.     Most of Jenkins' time was spent performing physical labor.  That is, Jenkins's duties included preparing food, cleaning, washing pots, pans, and utensils, and serving food.

32.     Defendants' job descriptions for Jenkins's position list the essential job duties of the job to be:

> a.  Serves meals that are timely, palatable, and appetizing in appearance and are in accordance with established portion control procedures and therapeutic diets.
>
> b.  Assists in daily or scheduled cleaning duties in accordance with established policies and procedures to include but not limited to work tables, meat blocks,

5

refrigerators/freezers, sweep/mop floors as directed, carry soiled utensils/dishes to work areas, wash and clean utensils as directed, empty trash containers into dumpsters, clean cans and replace trash can liners.

c.  Keeps work area dry and free of hazards and sanitizes dining room table and chairs.

d.  Operates dish machine using proper sanitizing and safety techniques. Racks, rinses and feeds dishes into dish machine.

e.  Washes pots and pans as per facility policies and procedures.

f.  Places groceries, meats and supply items in appropriate storage areas as directed.

g.  Transfers food trucks from dietary department to assigned areas in a safe and timely manner.

h.  Utilizes and maintains all equipment appropriately, i.e.: dish machine, coffee urn, refrigerators, mixers, blender, and toaster.

i.  Prepares and portions food items such as desserts, salads, juices, coffee, and nourishments.

j.  Assists in inventory and proper storing of foods, supplies, etc. as directed.

k.  Provides cleaning and busing of tables in dining rooms as instructed, in a courteous manner.

l.  Makes efforts to ensure that residents' needs and preferences are accommodated, i.e.: alternate menus offered, special request nourishments/snacks provided upon request, etc.

33.    At all times relevant to the Complaint, Jenkins was a "manual worker" within the meaning of NYLL § 190(4).

34.    Jenkins's primary duties as a Dietary Aide were non-clerical, non-managerial, and not related to sales.

35.    As a result, Jenkins was a "manual worker" as per N.Y. Lab. Law § 190(4).

36.    Jenkins was entitled to payment of his wages withing seven calendar days after the end of the workweek, as per N.Y. Lab. Law §191(1)(a).

37.    Throughout his employment, however, Defendants paid Jenkins every two weeks.

6

38.     Jenkins was paid on the same biweekly payment schedule as Plaintiff Jones and other Manual Workers.

39.     Jenkins has expressed her consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A.

**The McGuire Group, Inc.**

40.     Upon information and belief, The McGuire Group, Inc. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

41.     Upon information and belief, The McGuire Group, Inc.'s principal place of business is located at 455 Cayuga Road, Suite 200, Buffalo, New York 14225.

42.     The Facility Defendants list the address to which the Department of State will mail process if accepted on its behalf as 455 Cayuga Road, Suite 200, Buffalo, NY 14255.

43.     At all times hereinafter mentioned, The McGuire Group, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(6).

44.     At all times hereinafter mentioned, the activities of The McGuire Group, Inc. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

45.     Upon information and belief, The McGuire Group, Inc. maintains control, oversight, and direction over its operations and employment practices.

46.     At all times hereinafter mentioned, The McGuire Group, Inc. employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

47.     The McGuire Group, Inc.'s annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

*Defendant Brookhaven Health Care Facility, LLC*

48.     Upon information and belief, Brookhaven Health Care Facility, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

49.     At all times hereinafter mentioned, Brookhaven Health Care Facility, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

50.     At all times hereinafter mentioned, the activities of Brookhaven Health Care Facility, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

51.     Upon information and belief, Brookhaven Health Care Facility, LLC maintains control, oversight, and direction over its operations and employment practices.

52.     At all times hereinafter mentioned, Brookhaven Health Care Facility, LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

*Defendant Garden Gate Health Care Facility, LLC*

53.     Upon information and belief, Garden Gate Health Care Facility, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

54.     At all times hereinafter mentioned, Garden Gate Health Care Facility, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

55.     At all times hereinafter mentioned, the activities of Garden Gate Health Care Facility, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

56.     Upon information and belief, Garden Gate Health Care Facility, LLC maintains control, oversight, and direction over its operations and employment practices.

57.     At all times hereinafter mentioned, Garden Gate Health Care Facility, LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendant Autumn View Health Care Facility, LLC,***

58.     Upon information and belief, Autumn View Health Care Facility, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

59.     At all times hereinafter mentioned, Autumn View Health Care Facility, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

60.     At all times hereinafter mentioned, the activities of Autumn View Health Care Facility, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

61.     Upon information and belief, Autumn View Health Care Facility, LLC maintains control, oversight, and direction over its operations and employment practices.

62.     At all times hereinafter mentioned, Autumn View Health Care Facility, LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant North Gate Health Care Facility, LLC**

63.     Upon information and belief, North Gate Health Care Facility, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

64.     At all times hereinafter mentioned, North Gate Health Care Facility, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

65.     At all times hereinafter mentioned, the activities of North Gate Health Care Facility, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

66.     Upon information and belief, North Gate Health Care Facility, LLC maintains control, oversight, and direction over its operations and employment practices.

67.     At all times hereinafter mentioned, North Gate Health Care Facility, LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant Seneca Health Care Center, LLC**

68.     Upon information and belief, Seneca Health Care Facility, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

69.     At all times hereinafter mentioned, Seneca Health Care Facility, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

70.     At all times hereinafter mentioned, the activities of Seneca Health Care Facility, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

71.     Upon information and belief, Seneca Health Care Facility, LLC maintains control, oversight, and direction over its operations and employment practices.

72.     At all times hereinafter mentioned, Seneca Health Care Facility, LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendant Harris Hill Nursing Facility, LLC***

73.     Upon information and belief, Seneca Health Care Facility, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

74.     At all times hereinafter mentioned, Seneca Health Care Facility, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

75.     At all times hereinafter mentioned, the activities of Seneca Health Care Facility, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

76.     Upon information and belief, Seneca Health Care Facility, LLC maintains control, oversight, and direction over its operations and employment practices.

77.     At all times hereinafter mentioned, Seneca Health Care Facility, LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendants***

78.     Defendants constitute a unified operation.

79.     Defendants constitute a common enterprise.

80.     Defendants have interrelated operations.

81.     The McGuire Group, Inc.'s executives oversee and manage operations at Defendants' facilities.  For example, the President, as per Defendants' website, "is responsible for

the oversight, management, and direction of services for the company's 2,100 employees and six facilities[.]"  The CEO, "is responsible for managing the overall operations of the organization and ensuring regulatory compliance across the board." *See* https://www.mcguiregroup.com/about-mcguire/administration/ (last accessed, Sept. 7, 2022).

82.     Defendants have common management.

83.     The McGuire Group, Inc.'s executives exercise control of the administration of the Facility Defendants' operations.

84.     Defendants have a centralized control of labor relations.

85.     Defendants utilized a centralized job opening and hiring system to advertisement positions available at the facilities and The McGuire Group, Inc.'s headquarters.

86.     Defendants have common ownership, specifically The McGuire Group, Inc. and the McGuire family.

87.     Defendants share employees.

88.     Defendants employ individuals to float between the five facilities located in Western New York.

89.     Defendants commingle funds with each other.

90.     Defendants constitute a single employer.

91.     Defendants constitute an integrated enterprise.

92.     Defendants maintain control, oversight, and direction over their employees, including timekeeping, payroll and other employment practices that applied to them.

93.     At all times hereinafter mentioned, Defendants individually and collectively were and still are "employers" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(5).

94.     At all times hereinafter mentioned, the activities of Defendants constituted an "enterprise" within the meaning of 29 U.S.C. § 203(r) & (s).

95.     At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

96.     Defendants' collective annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## THE FLSA COLLECTIVE ACTION

97.     Plaintiffs seek to proceed as a collective action with regards to the First Causs of Action, pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the FLSA Collectives.

98.     At any given time, Defendants employ over 200 individuals who were employed as "Manual Workers," including in the job tiles of Maintenance Aide and Dietary Aide, like Plaintiffs and other titles such as: Cook; Housekeeping Aide; Laundry Aide; and Certified Nursing Assistant.

99.     As a result, upon information and belief, there are approximately more than 200 current and former similarly situated employees in the FLSA Collective.

100.    Plaintiffs represent other employees and are acting on behalf of Defendants' current and former employees' interests as well as their own interests in bringing this action.

101.    The FLSA Collective is readily identifiable and locatable through Defendants' records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collectives, who have been unlawfully deprived of minimum wages in violation of the FLSA, will be unable to

secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## CLASS ACTION ALLEGATIONS

102.    Plaintiffs bring this action on this action on their behalf and as a class action, pursuant Rule 23(a) and (b), on behalf of the Class.

103.    The persons in the Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.

104.    Upon information and belief, the size of the Class exceeds 400.

105.    This case is properly maintainable as a class action under Rule 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of Class, including but not limited to:

    a.  whether Defendants failed to pay timely wages to Plaintiffs and the Class in violation of and within the meaning of the N.Y. Lab. Law § 191(1)(a);

    b.  whether Defendants acted in good faith when failing to pay Plaintiffs and the Class timely; and

    c.  the nature and extent of class-wide injury and the measure of damages for those injuries.

106.    Plaintiffs will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class.

107.    Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

108.    Plaintiffs and the Class have been equally affected by Defendants' failure to pay proper wages.  Moreover, members of the Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

14

109.    Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

110.    Plaintiffs' claims are typical of those of the Class.  Plaintiffs and the Class were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay timely wages.

111.    Plaintiffs' job duties and manner of payment are typical of those of the Class.

112.    That is, Plaintiffs and the Class were manual workers.  They spent over 25% of their working time on physical labor such as: cooking; cleaning; carrying, lifting, or otherwise moving people, food, materials, supplies, and equipment; and remaining on their feet to complete their duties.

113.    Plaintiffs and the Class were paid every other week.

114.    Defendant applied their biweekly payment policy to the Class uniformly.

115.    Plaintiffs are informed, believe, and thereon allege that Defendants' unlawful conduct has been widespread, repeated, and consistent as to the Class Members and throughout Defendants' operations in New York.

116.    Plaintiffs and the Class were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.

117.    Plaintiffs and the Class were uniformly deprived of the ability to use – i.e., spend, invest, or save – their earned wages during periods in which payment was illegally delayed.

118.    Plaintiffs and the Class lost the opportunity to grow such untimely-paid wages through investment or otherwise benefit financially, including by paying down debts earlier.

119.    Defendants, however, benefited from the delayed payments.  That is, among other things, Defendants reduced its administrative costs by paying less frequently than required and use the extra money they were holding onto as they pleased until payroll was cut.

120.    Plaintiffs and the Class were denied wages amount to at least the minimum wage times their hours worked for the duration of the illegal delay.

121.    Plaintiffs and the Class were denied their federally mandated overtime wages for the duration of the illegal delay.

122.    Defendants were able to pay all minimum wages and overtime wages due on a weekly basis.

123.    Defendants were able to and did pay Plaintiffs and the Class all minimum wages and overtime wages due within the statutorily required period as it relates to the second workweek of each pay period, but refused to do so for the first workweek.

124.    Defendants did not possess a good faith basis for deciding to pay and thereafter continuing to pay their employees' wages biweekly.

125.    The State of New York has required certain businesses to pay their manual workers on a weekly basis since the 19th Century.  *See* N.Y. Session Law 1890, Ch. 388 § 1 ("Every manufacturing . . . company shall pay weekly, each and every employee engaged in its business, the wages earned by such employee to within six days of the date of such payment . . . ."); N.Y. Session Law 1897, Ch. 415 §§ 2, 10 ("Every corporation . .  shall pay weekly to each employe [sic] the wages earned by him to a day not more than six days prior to the date of such payment.").

126.    A reasonable employer inquiring into the wage payment rules of New York would know that manual workers are to be paid each week given that, for example, the rules are listed on the Department of Labor's Frequency Asked Quests flyer regarding the Wage Theft Prevention

Act    (https://dol.ny.gov/system/files/documents/2021/03/wage-theft-prevention-act-frequently-asked-questions_0.pdf) and many legal, human resource, and employment blogs brought attention to this issue following the First Department's 2019 decision in *Vega v. CM & Assocs. Constr. Mgmt. LLC*, 175 A.D.3d 1144 (1st Dept. 2019).

127.    Upon information and belief, Defendants do not qualify for the exemption from the NYLL's weekly payment requirement because they do not employ over 1,000 in the state of New York.

128.    Upon information and belief, Defendants did not apply for the exemption.

129.    The New York State Department of Labor has not authorized Defendants to pay its employees on a biweekly basis.

130.    Upon information and belief, Defendants did not: (a) inquire into whether its biweekly payroll practice complies with the NYLL; (b) take requisite steps to ensure that Plaintiffs and Class Members were paid as per the timely pay requirements of the NYLL; and (c) conduct any study or audit of its compensation practices to ensure that Plaintiffs and the Class Members were paid in compliance with the NYLL's timely payment requirements.

131.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.   The Class has been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.   In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FIRST CAUSE OF ACTION
### FLSA – Failure to Pay Timely Wages
### (On behalf of Plaintiffs and the FLSA Collective)

132.　Plaintiffs incorporates by reference all preceding allegations.

133.　Plaintiffs and members of the FLSA Collective are current and former employees entitled to on-time payment of their statutorily required wages after the workweek ends. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

134.　Defendants, however, withheld Plaintiffs and the FLSA Collective's federally mandated wages for about 11 days after the conclusion of the workweek.

135.　This delay was pursuant to a companywide policy and practice to pay Defendants' employees on a biweekly basis.

136.　Such a delay is inherently unreasonable, as Defendants were required by New York law to pay Plaintiffs and the FLSA Collective within seven days after the end of the workweek.

137.　Defendants failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiffs and the FLSA Collective.

138.　Defendants had the means to pay Plaintiffs and the FLSA Collective within one week of the end of the workweek but chose not to.

139.　Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

140.　As a consequence of the willful delay of wages, alleged above, Plaintiffs and the FLSA Collective incurred damages and seek to recover interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**NYLL – Untimely Payment of Wages**
**(On behalf of Plaintiffs and the Class)**

141.   Plaintiffs incorporate by reference all preceding allegations.

142.   Defendants failed to pay Plaintiffs and the Class within seven days after the end of each workweek as required by NYLL § 191(1)(a).

143.   Defendants have not employed over 1,000 individuals in the State of New York for one or more consecutives years.

144.   Defendants have not received authorization under NYLL § 191(1)(a)(ii) from the Commissioner of Labor to pay its employees less frequently than once per week.

145.   Defendants do not possess a good faith basis for believing that its delayed payment of wages complied with the law.

146.   Due to Defendants violations of NYLL § 191(1)(a), Plaintiffs and the Class are owed liquidated damages amounting to the value of any late-paid wages during the six years prior to the filing of this complaint, interest, and reasonable attorneys' fees and costs pursuant to NYLL § 198.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests the following relief:

A.   Leave to give notice to the FLSA Collective that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.   Certification of this case as a Class Action under Rule 23;

C.   Appointment of Plaintiffs as Class Representatives;

D.   Appointment of Kessler Matura P.C. and Shavitz Law Group P.A. as Class Counsel;

E.   Liquidated damages;

F.      Attorney's fees and costs of the action;

G.      Pre-judgment interest and post-judgment interest as provided by law;

H.      A declaratory judgment that the practices complained of are unlawful; and

I.      Such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: Melville, New York
       September 9, 2022

Respectfully submitted,


By: /s/ *Troy l. Kessler*
       Troy L. Kessler

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Phone: (631) 499-9100
Fax: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

Michael J. Palitz
**SHAVITZ LAW GROUP, P.A.**
447 Madison Avenue, 6th Floor
New York, New York 10022
Telephone:  (800) 616-4000
Facsimile:  (561) 447-8831
mpalitz@shavitzlaw.com

Gregg I. Shavitz*
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Telephone:  (561) 447-8888
Facsimile:  (561) 447-8831
gshavitz@shavitzlaw.com
*to apply for admission pro hac vice*

**Attorneys for Plaintiffs and**
**the Putative Class and Collective Actions**

20

# Exhibit A

**CONSENT TO JOIN**

1. I consent to be a party plaintiff in a lawsuit against my former employer, The McGuire Group Inc., and related entities for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the New York Labor Law.

2. During the past three years, there were workweeks in which I was not paid in accordance with the requirement that employees be paid on the regular pay day under the Fair Labor Standard Act.

3. I designate Kessler Matura P.C. and the Shavitz Law Group, P.A. to represent me in this case and to act on my behalf in all matters relating to this action, including any settlement of my claims.

4. I also consent to join any separate or subsequent action to assert my claims against my former employer and related entities potentially liable.

09 / 09 / 2022
_____
Date

_____
Signature

Charles Jones
_____
Print Name

**CONSENT TO JOIN**

1. I consent to be a party plaintiff in a lawsuit against my former employer, The McGuire Group Inc., and related entities for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the New York Labor Law.

2. During the past three years, there were workweeks in which I was not paid in accordance with the requirement that employees be paid on the regular pay day under the Fair Labor Standard Act.

3. I designate Kessler Matura P.C. and the Shavitz Law Group, P.A. to represent me in this case and to act on my behalf in all matters relating to this action, including any settlement of my claims.

4. I also consent to join any separate or subsequent action to assert my claims against my former employer and related entities potentially liable.

09 / 09 / 2022

Date

*Alexis Jenkins*

Signature

Alexis Jenkins

Print Name